UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL BONANO,

                Plaintiff,

-against-

DARRION GRANT; CHELSEA ERET,
ASSISTANT DISTRICT ATTORNEY;
OUSSEYMENOU DIOP; VARIOUS
UNDISCLOSED 30TH PRECINCT; NY
COUNTY DA'S OFFICE SUPERVISORS,

                Defendants.

25-CV-2808 (LTS)

ORDER OF DISMISSAL
WITH LEAVE TO REPLEAD

LAURA TAYLOR SWAIN, Chief United States District Judge:

      Michael Bonano is a pretrial detainee currently held at the North Infirmary Command on Rikers Island. He sues New York City Police Department (NYPD) Officer Darrion Grant, Assistant District Attorney Chelsea Eret, a private individual (Ousseymenou Diop), and various unidentified supervisors from the NYPD's 30th Precinct and the Manhattan District Attorney's Office. Plaintiff seeks leave to proceed *in forma pauperis* ("IFP"),[1] that is, without prepayment of fees, but there is a question as to whether he is barred, under 28 U.S.C. § 1915(g), from proceeding IFP. For the reasons set forth below, the Court grants Plaintiff's request to proceed IFP and dismisses the complaint, with 30 days' leave to replead.

**STANDARD OF REVIEW**

      The Prison Litigation Reform Act requires that federal courts screen complaints brought by prisoners who seek relief against a governmental entity or an officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The Court must dismiss a prisoner's *in forma*

---

[1] Prisoners are not exempt from paying the full filing fee even when they have been granted permission to proceed IFP. See 28 U.S.C. § 1915(b)(1).

*pauperis* complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). The Court must also dismiss a complaint if the court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

## BACKGROUND

The following facts are drawn from the complaint.[2] At approximately 6 a.m. on March 22, 2022, at the corner of West 112th Street and Lenox Avenue, Ousseymenou Diop attempted to load into his S.U.V. Plaintiff's rolling suitcase, which Plaintiff had stepped away from momentarily. (ECF 1 at 5.) Plaintiff ran up to Mr. Diop and said, "That's my shit!", to which Mr. Diop responded, "Oh, that's your shit? What you wanna do?"

Plaintiff was then 56 years old and weighed 140 pounds, while Diop was in his mid-30's and "approximately 6'5" and 260 seemingly well-muscled pounds." (*Id.*) Plaintiff "perceived that [he] would have to make a show of imminent force to ward off [Diop's] attempt to simply take [his] property," and he took a "kitchen knife from [his] waistband." (*Id.* at 6.) Diop "ran to the vestibule of his residential building between [West] 111th and 112th Streets on Lenox so he could hide and call the police to make the completely false 'emergency' call that [Plaintiff] was 'robbing' him." (*Id.*) Meanwhile, Plaintiff was attempting to locate his leather shoulder bag, which contained his new clothes, in Diop's S.U.V. Plaintiff had left his rolling suitcase and a box with six pairs of shoes on the corner. Once NYPD officers had arrived and exited the patrol car, Diop returned from across the street "to charge at and punch [Plaintiff] in the face – thus

---

[2] The Court quotes from the complaint verbatim. All spelling, grammar, and punctuation are as in the original unless noted otherwise.

2

prompting [him] to again withdraw [his] knife to defend" himself." (*Id.* at 7.) Police Officer Darrion Grant then pointed the gun at Plaintiff and ordered him to drop the knife, which he did. (*Id.*)

Plaintiff made it clear that "Diop had tried to 'strong-arm rob' [him], and [that he had] simply and solely displayed [his] knife to repel his robbery and retain [his] property." (*Id.*) Plaintiff was detained at the precinct for nearly 8 hours, which caused him to fail to appear for a scheduled court hearing in another matter, where he was being considered for a judicial diversion process and drug treatment program.[3]

Despite the fact that Diop allegedly was the "sole perpetrator," who had admitted that he actually "tried to rob" Plaintiff, only Plaintiff faced criminal charges. Plaintiff was "charge[d] by the 32nd Precinct command and arresting officers, in consultation with N.Y. County A.D.A. Chelsea Eret." (*Id.* at 5.)  The criminal charges against him (which he describes as the "phony Menacing/4th CPW" March 22, 2022 case") were dismissed "months later, with supervisors' consent." (*Id.* at 13.) Plaintiff contends that "P.O. Grant, A.D.A. Eret and supervisors contrived the March 22, 2022 case in order to [cause Plaintiff to] accumulate more arrests and cases so as to deprive [him] of Judicial Diversion." (*Id.* at 13.)

Plaintiff brings claims for false arrest, malicious prosecution, conspiracy among the defendants to fabricate criminal charges against him, and state law. Plaintiff seeks $2 million in compensatory and punitive damages.

---

[3] Plaintiff refers to charges for "Macy's Grand Larceny," that arose on March 13, 2022, which may be a reference to the criminal proceedings that he was unable to attend.

3

# DISCUSSION

**A.     Filing fees**

Plaintiff seeks to proceed IFP in this action. The Prison Litigation Reform Act's "three-strikes" provision states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

Two district courts have already concluded in the cases before them that Plaintiff was barred under Section 1915(g) from proceeding IFP as a prisoner because he had at least three prior dismissals that qualified as strikes. *See Bonano v. Costello*, No. 9:19-CV-0671 (GTS) (CFH), 2019 WL 3081058, at *3 (N.D.N.Y. July 15, 2019); *Bonano v. Tillinghast*, No. 6:18-CV-6405 (EAW), 2022 WL 17362422, at *3 (W.D.N.Y. Dec. 1, 2022) ("[B]ecause Plaintiff incurred at least three prior strikes and failed to allege the imminent danger of serious physical harm, his *in forma pauperis* status is hereby revoked").

The Court therefore considers whether issue preclusion (also known as collateral estoppel) prevents Plaintiff from relitigating whether his prior dismissals are strikes. *See, e.g.*, *Wallace v. All Pers. Liab. Carriers-Underwriters of Land*, No. 22-CV-8022 (LTS), 2022 WL 17586330, at *1 (S.D.N.Y. Dec. 9, 2022) (holding that "[t]he three-strikes provision applies here, as Wallace is barred from filing any new action IFP while he is a prisoner") (citation omitted), *vacated and remanded sub nom.*, *Hillis v. All Pers. Liab. Carriers-Underwriters of Land*, No. 23-47, 2023 WL 4004488, at *1 (2d Cir. June 12, 2023) (directing that, on remand, among other

4

things, "the district court should consider whether the Fifth Circuit's finding that Wallace had three strikes precludes relitigation of Wallace's three-strikes status under collateral estoppel").

### 1. Collateral estoppel effect of prior Section 1915(g) bar orders

When determining the preclusive effect of a prior federal judgment, courts apply the federal law on collateral estoppel. See *Purdy v. Zeldes*, 337 F.3d 253, 258 (2d Cir. 2003). Under federal law, collateral estoppel applies when "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Id.* Collateral estoppel "may be inappropriate," however, where "controlling facts or legal principles have changed significantly since the initial decision." *Wyly v. Weiss*, 697 F.3d 131, 143-44 (2d Cir. 2012) (quotation marks omitted); *see also Montana v. United States*, 440 U.S. 147, 155 (1979).

The Second Circuit has not squarely addressed in a published opinion when collateral estoppel precludes relitigation of a district court's conclusion that a prisoner has three strikes.[4] Some district courts in this and other circuits have held that collateral estoppel can apply. *See, e.g., Shepherd v. Keyser*, No. 21-CV-2363 (LTS), 2021 WL 1842159, at *3 (S.D.N.Y. May 7, 2021) (concluding that "relitigation of whether Plaintiff has three strikes is barred by the doctrine

---

[4] In *Escalera v. Samaritan Vill.*, 938 F.3d 380, 381 (2d Cir. 2019), the Second Circuit did not explicitly address the preclusive effect, if any, of an earlier Section 1915(g) order. Then-Chief District Judge McMahon, citing another court's order, had held that, "Plaintiff is barred from filing any new action *in forma pauperis* while a prisoner." *Escalera v. Samaritan Vill.*, No. 17-CV-4691 (CM) (S.D.N.Y. June 22, 2017) (citing *Escalera v. Graham*, No. 08-CV-412 (GLS)(GHL), 2008 WL 4181741 (N.D.N.Y. May 27, 2008)). On appeal, the Second Circuit did not treat Judge McMahon's decision as having given preclusive effect to the Section 1915(g) decision in *Graham*, No. 08-CV-0412; instead, it read Judge McMahon's decision as concluding that Escalera "had three strikes under the PLRA," a conclusion that the Circuit reviewed *de novo*. *Escalera*, 938 F.3d at 381 ("The district court's decision that a certain type of dismissal constitutes a 'strike' for purposes of § 1915(g) is an interpretation of a federal statute . . . which this Court reviews *de novo*.").

of issue preclusion"); *Thomas v. Ellis*, No. 12-CV-05563 (PR), 2015 WL 859071, at *2 (N.D. Cal. Feb. 26, 2015) ("[C]ollateral estoppel bars Plaintiff from litigating whether the three cases addressed in *Sepulveda* qualify as strikes under § 1915(g)."); *Thomas v. Sepulveda*, No. 14-CV-1157, 2014 WL 5409064, at *2-3 (N.D. Cal., Oct. 23, 2014) (holding that the doctrine of collateral estoppel barred plaintiff from relitigating whether he had accumulated three strikes).

Upon review, the Court concludes that the two prior district court orders finding Plaintiff barred under Section 1915(g) do not have preclusive effect in this case. First, the district court did not offer Plaintiff notice and an opportunity to respond in *Costello*, No. 9:19-CV-0671 (N.D.N.Y.), before holding that he had at least three prior dismissals that qualified as strikes, and Plaintiff therefore did not have a full opportunity to litigate the issue. Second, in *Tillinghast*, No. 6:18-CV-6405 (W.D.N.Y.), resolution of Plaintiff's three-strikes status was not "necessary to support a valid and final judgment on the merits," *Purdy*, 337 F.3d at 258, which is another element of collateral estoppel. After the district court denied Plaintiff leave to proceed IFP in *Tillinghast*, he then paid the filing fees and continued to litigate the matter, until it was eventually dismissed for failure to prosecute; the denial of IFP thus was not necessary to the judgment.[5] These district court decisions therefore do not collaterally estop Plaintiff from relitigating his three-strikes status.

### 2. **Whether Plaintiff has three strikes**

After reviewing the dismissals in Plaintiff's prior civil actions, including those filed under other names that he has used (Anthony Cusamano and Anthony Armatullo), the Court has identified only two dismissals that qualify as strikes. *See Bonano v. Shapiro*, No. 18-2995 (2d

---

[5] *See Tillinghast*, 2024 WL 1995235, at *2 (W.D.N.Y. May 6, 2024) ("[T]he Court adopts the R&R (Dkt. 123) to the extent it recommended dismissal of Plaintiff's complaint with prejudice for failure to prosecute pursuant to Rule 41(b)").

Cir. May 7, 2019) (Plaintiff's appeal, filed while he was incarcerated in Auburn Correctional Facility, was dismissed because it "lacks an arguable basis either in law or in fact." (citing *Neitzke v. Williams*, 490 U.S. 319, 325 (1989))); *Bonano v. Staniszewski*, No. 17-4163 (2d Cir. May 30, 2018) (Plaintiff's appeal, filed while he was incarcerated in Southport Correctional Facility, was dismissed because it "lacks an arguable basis either in law or in fact.") (citing *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)). Section 1915(g) lists frivolous dismissals as a strike ground, and the dismissals of these appeals as frivolous qualify as strikes.

The district court in *Tillinghast* had identified two additional actions that it treated as strikes: *Armatullo v. Vasquez*, 03-CV-8189 (S.D.N.Y.), and *Bonano v. Alonso*, No. 1:12-CV-3646 (S.D.N.Y. filed June 8, 2012). Although the docket sheet in *Vasquez*, 03-CV-8189, suggests that the action was resolved entirely on strike grounds, the dismissal order itself states that some claims are dismissed based on sovereign immunity, which is not listed in Section 1915(g) as a strike ground.[6] *See Escalera*, 938 F.3d at 382 ("[M]ixed dismissals are not strikes under the PLRA"); *Hillis*, No. 23-47, 2023 WL 4004488, at *1 (citing *Thompson v. DEA*, 492 F.3d 428, 435–37 (D.C. Cir. 2007) (holding that dismissals for lack of subject matter jurisdiction are not 28 U.S.C. § 1915(g) strikes and suggesting that sovereign immunity dismissals are likewise not strikes)); *see also Kelsey v. Kessel*, No. 24-1105 (2d Cir. May 7, 2025) (summary order) ("A defense of sovereign immunity implicates the court's subject matter jurisdiction").

---

[6] Courts "may rely on the relevant docket sheets if they indicate with sufficient clarity that the prior suits were dismissed on the grounds that they were frivolous, malicious, or failed to state a claim upon which relief may be granted." *Harris v. City of New York*, 607 F.3d 18, 23-24 (2d Cir. 2010).

7

*Vasquez* thus appears to be a "mixed dismissal" that does not qualify as a strike because the entire action was not dismissed on Section 1915(g) grounds. *See Escalera*, 938 F.3d at 381-82.[7]

The dismissal of *Alonso*, 12-CV-3646, is also a mixed dismissal that does not qualify as a strike. A petition for a writ of *habeas corpus* is not a "civil action" for purposes of Section 1915(g). *Jones v. Smith*, 720 F.3d 142 (2d Cir. 2013). The *Alonso* district court construed the complaint, in part, as a petition for a writ of *habeas corpus*, and the Court of Appeals also treated it as such, *Bonano v. Alonso*, No. 12-3412-pr (2d Cir. filed April 17, 2013).[8] Thus, both the district court's order of dismissal and the appeal are mixed dismissals that are not strikes.

The *Costello* bar order also identified two additional potential strikes: *Cusamano v. Bullock*, No. 1:08-CV-2737 (E.D.N.Y. filed Aug. 28, 2008), and *Cusamano v. Carlsen*, No. 9:08-CV-00422 (N.D.N.Y. Apr. 24, 2008). Although the docket sheets may be unclear, careful review reflects that Plaintiff was not a prisoner, for purposes of 28 U.S.C. § 1915(h), when he brought either action.[9] *See Gibson v. City Municipality of New York*, 692 F.3d 198, 201 (2d Cir. 2012) ("[T]he relevant time at which a person must be "a prisoner" within the meaning of the

---

[7] It has long been the majority view in this Circuit that mixed dismissals are not strikes. *See*, *e.g.*, *Gillard v. Canfield*, No. 12-CV-428S, 2013 WL 5276546, at *3 (W.D.N.Y. Sept. 17, 2013) ("[S]trikes should be imposed only when entire actions are dismissed for one of the stated reasons within section 1915(g)."); *Tafari v. Hues*, 539 F. Supp. 2d 694 (S.D.N.Y. 2008) ("[S]trike resulted only when entire action was dismissed for reasons stated in three-strikes statute.").

[8] *See Thompson v. Choinski*, 525 F.3d 205, 210 (2d Cir. 2008) ("[T]he district court erred in the belief that a claim for *habeas corpus* may not be joined in the same pleading with a civil rights claim."); *see also Garrett v. Murphy*, 17 F.4th 419, 432 (3d Cir. 2021) (where district court expressly refused to construe detainee's claim seeking immediate release as a *habeas* action, dismissal order was not a "mixed dismissal").

[9] *See Bullock,*, ECF1:08-CV-2737, 1 (Complaint at 32 ("I was released from prison less than five months ago. . . .")); *Cusamano v. Carlsen*, No. 9:2008-CV-00422 (N.D.N.Y. Apr. 24, 2008) (ECF 3 at 2, n.2 ("Because he was released from prison [in February 2008, which was before filing the action], the plaintiff may litigate this matter without complying with the fee requirements imposed by the Prison Litigation Reform Act.")).

PLRA in order for the Act's restrictions to apply is 'the moment the plaintiff files his complaint.'").

The Court has also reviewed actions not specified in the bar orders and has not located other dismissals that qualify as strikes. Plaintiff's other actions include *habeas corpus* petitions not covered by Section 1915(g), [10] actions that went to trial or where summary judgment was granted for insufficient evidence,[11] and actions that were dismissed on administrative or other non-strike grounds.[12] Because the Court has not identified a third strike that issued before this action was filed, the Court grants, by separate order, Plaintiff's request to proceed IFP. Plaintiff has brought dozens of actions under multiple names; if it later appears that Plaintiff had previously brought an action as a prisoner that was dismissed on strike grounds, qualifying as his

---

[10] *Bonano v. Thompson*, No. 6:19-CV-6203 (W.D.N.Y. Apr. 23, 2019) (*habeas corpus* petition); *Bonano v. Thompson*, No. 6:19-CV-06385 (W.D.N.Y. Nov. 21, 2019) (same); *Cusamano v. Donelli*, No. 06-CV-6047 (S.D.N.Y. July 7, 2010) (*habeas corpus* petition), *appeal dismissed*, 10-04878 (2d Cir. Apr. 27, 2011); *Armatullo v. Taylor*, No. 04-CV-5357 (S.D.N.Y. Jan. 17, 2007) (*habeas corpus* petition); *Armatullo v. Taylor*, No. 04-CV-7821 (S.D.N.Y. Oct. 1, 2004) (*same*).

[11] *Bonano v. Staniszewski*, No. 12-CV-0879 (E.D.N.Y. Sept. 22, 2017) ("[A]s there is no genuine issue of material fact, Defendants' motion for summary judgment is granted."); *Cusamano v. Alexander*, No. 08-CV-0781 (N.D.N.Y. Feb. 9, 2011) (granting summary judgment because "there is no evidence that the defendant violated any constitutional rights of the plaintiff by imposing a special condition of parole"); *Bonano v. Carlsen*, No. 08-CV-00755 (N.D.N.Y. Sept. 3, 2013) (ECF 108 at 9 (granting summary judgment on remaining claim because "Plaintiff has failed to raise a triable issue of fact as to whether Defendant Carlsen exposed him to brown, polluted water in violation of the Eighth Amendment."); *Cusamano v. Sobek*, No. 06-CV-0623 (N.D.N.Y. Nov. 17, 2011) (jury verdict for defendants).

[12] *Bonano v. Crego*, No. 20-CV-6897 (W.D.N.Y.) (dismissed for failure to prosecute); *Bonano v. Hickey*, No. 20-CV-06141 (W.D.N.Y.) (inadequate IFP application); *Bonano v. Hughes*, No. 20-CV-6251 (W.D.N.Y.) (same); *Bonano v. Shapiro*, No. 16-CV-0844 (N.D.N.Y. Sept. 26, 2018) (dismissed as sanction for Plaintiff's failure to sit for deposition).

third strike, IFP may be revoked, and Plaintiff would at that point be required to prepay any remaining unpaid fees.

**B.     False Arrest**

A claim for false arrest under Section 1983 looks to state law as a starting point to determine the elements of a claim for false arrest. *See Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 378 (2017) ("[T]o flesh out the elements of this constitutional tort, we must look for 'tort analogies.'"). To establish a false arrest claim under New York law, a plaintiff must show that: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Liranzo v. United States*, 690 F.3d 78, 95 (2d Cir. 2012). An arrest is privileged if it is based on probable cause. *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) ("The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest.") (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)) (internal quotation marks omitted).

Where "an arrest is not made pursuant to a judicial warrant, the defendant in a false arrest case bears the burden of proving probable cause as an affirmative defense." *Mitchell v. City of New York*, 841 F.3d 72, 77 (2d Cir. 2016) (citing *Dickerson v. Napolitano*, 604 F.3d 732, 751 (2d Cir. 2010)). A plaintiff generally is not required to plead facts negating an affirmative defense. *Abbas*, 480 F.3d at 640.  A false arrest claim can be dismissed based on probable cause, however, if the facts alleged in the plaintiff's complaint show that the officers had probable cause. *See Silver v. Kuehbeck*, 217 F. App'x 18, 22 (2d Cir. 2007).

Officers have probable cause to arrest when they have "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed . . . a crime." *Jaegly*

10

*v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006).[13] "Probable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." *Bernard v. United States*, 25 F.3d 98, 102 (1994); *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (holding that a police officer is "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest"). When information is received from a putative victim or an eyewitness, probable cause exists unless the circumstances raise doubt as to the person's veracity. *Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995). Moreover, "an officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause." *Tuccillo v. Cnty. of Nassau*, 723 F. App'x 81, 82 (2d Cir. 2018) (citing *Panetta v. Crowley*, 460 F.3d 388, 395-96 (2d Cir. 2006)). "[T]he eventual disposition of the criminal charges is irrelevant to the probable cause determination." *Hahn v. Cnty. of Otsego*, 820 F. Supp. 54, 55 (N.D.N.Y. 1993), *aff'd*, 52 F.3d 310 (2d Cir. 1995)).

Here, Plaintiff alleges that, when he drew his knife on Diop in the presence of officers, he was arrested on charges of menacing and fourth degree criminal possession of a weapon, "even after Mr. Diop admitted that he [had] actually tried to rob" Plaintiff. (ECF 1 at 13.) The facts alleged in Plaintiff's complaint show that the officers had probable cause to believe that Plaintiff had committed a crime; this is so whether or not Diop was also subject to arrest, and notwithstanding any protestations of innocence that Plaintiff may have made. Because Plaintiff's

---

[13] "The existence of probable cause depends on the totality of the circumstances," *Washington v. Napolitano*, 29 F.4th 93, 105 (2d Cir. 2022), and courts consider only the facts "available to the officer[s] at the time of the arrest and immediately before it," *Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021) (internal quotation marks and citation omitted).

allegations show that officers had probable cause to arrest him, the allegations fail to state a Section 1983 claim for false arrest.

Plaintiff's allegations that he was arrested and criminally charged but that Diop was not charged for attempted robbery might be liberally construed as an effort to bring a claim for selective enforcement. To prevail on a selective enforcement claim, a plaintiff must show that (1) "compared with others similarly situated, [he] was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations." *Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019) (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995)). Because the allegations do not include any facts suggesting that Plaintiff was selectively treated based on impermissible considerations, such as race or religion, Plaintiff also fails to state a claim for selective enforcement. The Court therefore dismisses Plaintiff's Section 1983 claims for false arrest and selective enforcement for failure to state a claim on which relief can be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

**C.    Malicious Prosecution**

The tort of malicious prosecution "remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process." *Wallace v. Kato*, 549 U.S. 384, 389-90 (2007). To state a claim for malicious prosecution, a plaintiff must allege facts showing: (1) that the defendant initiated or continued a prosecution against the plaintiff; (2) that the defendant lacked probable cause to commence the proceeding or believe the proceeding could succeed; (3) that the defendant acted with malice; and (4) that the prosecution was terminated in the plaintiff's favor. *See Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002). Such a claim does not accrue until there is a favorable termination of the plaintiff's criminal proceedings. *See Heck v. Humphrey*, 512 U.S. 477, 489-90 (1994). "To demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious

prosecution, a plaintiff need only show that his prosecution ended without a conviction." *Thompson v. Clark*, 596 U.S. 36, 39 (2022).

Here, Plaintiff's allegations may suffice to allege favorable termination of his criminal proceedings, given that he alleges that his prosecution ended without a conviction. As with Plaintiff's false arrest claim, however, he has pleaded facts establishing that Defendants had probable cause to charge him. *See Rothstein v. Carriere*, 373 F.3d 275, 292 (2d Cir. 2004) ("The existence . . . of probable cause in a malicious prosecution suit is . . . determined . . . as of the time prosecution is commenced."); *Stansbury v. Wertman*, 721 F.3d 84, 95 (2d Cir. 2013) ("The probable cause standard in the malicious prosecution context is slightly higher than the standard for false arrest cases."). Because Plaintiff has pleaded facts establishing that Defendants had probable cause to charge him with a crime, Plaintiff's Section 1983 claim for malicious prosecution must be dismissed for failure to state a claim on which relief can be granted.

**D.     Abuse of process**

"While malicious prosecution concerns the improper issuance of process, '[t]he gist of abuse of process is the improper use of process after it is regularly issued.'" *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994) (alteration in original). To state a claim of abuse of process under section 1983, a plaintiff must allege facts showing that a defendant: "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Id.*

Plaintiff alleges that Defendants prosecuted him in order to impede his acceptance into a judicial diversion process and drug treatment program and to perpetuate his criminal conduct. He states:

13

> On March 22, 2022, A.D.A. Fret guided and participated in that day's ultimate false charges (even if misdemeanor) in order to thwart and/or impede my progression in regard to gaining acceptance and entrance to the Judicial Diversion program and drug treatment in the hope that I would continue to shoplift, incur more arrests, and ultimately either deprive me of alternative, no further jail/prison resolution and drug treatment participation and surmounting of my decades-long crack-addiction.

(ECF 1 at 13.) These allegations of a collateral objective are wholly conclusory. Rule 8 of the Federal Rules of Civil Procedure requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. Although the Court must accept all well-pleaded factual allegations as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009), it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. Plaintiff's allegations that Defendants had a collateral objective to deprive him of a judicial diversion program do not include any facts about anything Defendants did, said, or failed to do, that would make these allegations plausible. Plaintiff thus has not alleged facts sufficient to state a plausible Section 1983 abuse of process claim.

**E.      Conspiracy**

Plaintiff's allegations that Defendants "contrived the March 22, 2022 case in order to perpetuate crack and criminal conduct in the hope of seeing Plaintiff accumulate more arrests" could be construed as a claim of conspiracy arising under Section 1983.[14] To state a claim of

---

[14] A conspiracy claim under 42 U.S.C. § 1985(3) must "be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999). Because Plaintiff makes no allegations of class-based animus, the Court does not construe the allegations as a Section 1985(3) claim.

conspiracy under Section 1983, a plaintiff must show "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).

Vague and unsupported assertions of a claim of conspiracy are insufficient to state a claim upon which relief can be granted. *See, e.g.*, *Stoner v. Young Concert Artists, Inc.*, 626 F. App'x 293, 296 (2d Cir. 2015) (summary order); *Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003). Plaintiff's conspiracy claim is wholly unsupported by any factual allegations, and his Section 1983 conspiracy claim must therefore be dismissed for failure to state a claim on which relief can be granted.

**F.**     **State Law Claims**

A district court may decline to exercise supplemental jurisdiction of state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

Having dismissed the federal claims of which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

### G.    Leave to Amend

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because Plaintiff may be able to allege additional facts to state a valid federal claim, the Court grants Plaintiff 30 days' leave to amend his complaint to detail his claims.

If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter judgment in this action.

## CONCLUSION

The Court dismisses Plaintiff's Section 1983 claims, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and declines supplemental jurisdiction of the state law claims, 28 U.S.C. § 1367(c)(3), with **30 days' leave to replead**.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to hold this matter open on the docket until a civil judgment is entered.

SO ORDERED.

Dated:   August 11, 2025
         New York, New York

                                          /s/ Laura Taylor Swain
                                          LAURA TAYLOR SWAIN
                                          Chief United States District Judge