UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL BONANO,

Plaintiff,

-against-

DARRION GRANT; CHELSEA ERET; OUSSEYMENOU DIOP; 32ND PRECINCT SUPERVISORS; AND OFFICER DARRION GRANT'S PARTNER,

Defendants.

25-CV-2808 (LTS)

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff, who was recently released from incarceration in Ulster Correctional Facility on a conviction unrelated to these claims, is proceeding *pro se* and *in forma pauperis* (IFP). Plaintiff filed this complaint on March 21, 2025, asserting claims arising from his March 22, 2022 arrest. By order dated August 11, 2025, the Court concluded that Plaintiff was not barred, under 28 U.S.C. § 1915(g), from proceeding IFP while a prisoner at the time that he brought this action. The Court nevertheless dismissed Plaintiff's federal claims for failure to state a claim but granted leave to replead. Plaintiff filed an amended complaint (ECF 8), and the Court has reviewed it. The amended complaint, which is broadly similar to the original complaint, is dismissed for the reasons set forth below.

**STANDARD OF REVIEW**

The Court must dismiss a complaint, or portion thereof, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal on

any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted).

## BACKGROUND

The following facts are drawn from the amended complaint.[1] On March 22, 2022, around 6:00 a.m., at West 112th Street and Lenox Avenue in Manhattan, Plaintiff briefly left unattended his rolling suitcase, box, and leather shoulder bag, which contained new clothing collectively worth more than $3,000. Plaintiff returned about 20 seconds later and observed a larger man, later identified as Ousseymenou Diop, loading Plaintiff's suitcase, box, and shoulder bag into an SUV parked on the corner. Plaintiff confronted Diop, who responded aggressively. Plaintiff displayed a kitchen knife to deter Diop, who allegedly fled into the vestibule of his residential building between 111th and 112th Streets and called 911, falsely claiming that he had been the victim of a robbery. Plaintiff searched Diop's SUV for the missing leather shoulder bag, and then attempted to leave with his rolling suitcase and box.

New York City Police Department (NYPD) Officer Darrion Grant arrived in a squad car. At the same time, Diop ran up and punched Plaintiff in the face, causing Plaintiff to again display the knife. Officer Grant pointed a gun at Plaintiff and ordered him to drop the knife, and Diop then told the officer that Plaintiff had previously drawn a knife and falsely stated that Plaintiff had tried to steal Diop's property. Both men were handcuffed and transported to the 32nd Precinct. En route, the officer allegedly stated he had seen Diop punch Plaintiff and stated

[1] The Court quotes from the amended complaint verbatim. All spelling, grammar, and punctuation are as in the original unless noted otherwise.

that both were being detained "for the purpose of sorting out what in fact occurred[.]" (ECF 8 at 2, ¶ 7.)

Plaintiff told the arresting officers that the property was his, that Diop had tried to rob him, and that his kitchen knife was not a prohibited weapon. Plaintiff also asserted his alleged rights, under N.Y. Penal Law § 35.15, to defend his property and himself. Officer Grant recorded Plaintiff's statement that he had used force to regain his property, which Plaintiff contends was justified under the law. Plaintiff reasons that, in light of the fact that he was not charged with robbery, Diop must have admitted that the property belonged to Plaintiff. Despite apparently having this information, the officers released Diop without charges even though Plaintiff alleges that they must have understood that Diop had attempted to take Plaintiff's property, that Diop had falsely claimed to have been victimized, and that Diop had assaulted Plaintiff around the time that the police arrived. Meanwhile, Plaintiff was detained for 8-10 hours while the officers conferred with Assistant District Attorney (ADA) Chelsea Eret about potential charges against him.

Plaintiff alleges that the police officers and ADA Eret learned that he had a felony record, that he had a court date scheduled that same day, and that he is Latino. ADA Eret charged Plaintiff with misdemeanor menacing and fourth-degree criminal possession of a weapon. Plaintiff argues that the charges were "completely baseless" because (1) he displayed the knife initially only to "repel [Diop's] robbery" of his property and later Diop's "assault," and (2) his kitchen knife is not one of the 14 items listed in N.Y. Penal Law § 265.01 as a *per se* weapon, such as a gravity knife or switchblade. Plaintiff contends that he was subjected to selective prosecution.

Plaintiff was released from the 32nd Precinct around 3:20 p.m. on March 22, 2022, but the delay had caused him to miss an appearance in Part 92 of the Manhattan Treatment Court, triggering a warrant for his arrest. At a hearing on April 4, 2022, the ADA quoted Plaintiff's statement—that he "had a right to use or threaten the use of force to retain or regain [his] property and protect [him]self"—made in connection with the March 22, 2022 arrest. Based on this statement, among other things, the ADA sought supervised release, which required Plaintiff to attend weekly CASES counseling at West 125th Street. Plaintiff alleges that the ADA invoked prior unindicted 2010 grand jury allegations (that Plaintiff swung a pair of scissors at a store manager) to portray him as dangerous, resulting in a restriction on carrying a conventional knife and additional reporting restrictions that made it difficult for him to live at his Washingtonville home in Orange County. As a result, Plaintiff remained in New York City, where he was homeless and addicted, eventually leading to more criminal matters. Even though Plaintiff did attend court dates subsequent to the March 22, 2022 hearing that he had missed, he was remanded on June 10, 2022, on a separate charge.

In September 2022, the charges against Plaintiff arising from the incident with Diop were dismissed, both because Diop never filed a corroborating affidavit and due to "CPL 30.30 failure," that is, speedy trial limitations. (*Id.* at 7, ¶ 26.)

Plaintiff styles the amended complaint as bringing three causes of action. First, Police Officer Grant and his partner falsely arrested Plaintiff without probable cause. Second, Police Officer Grant, Grant's partner, 32nd Precinct supervisors, Ousseymenou Diop, and ADA Eret conspired to prosecute Plaintiff without cause, which he styles as claims for malicious prosecution, selective prosecution, and abuse of process in violation of the 4th, 5th, 6th, 8th, and 14th Amendments and "42 U.S.C. §§ 1981, 1983, 1984, 1985, and 1986." (*Id.* at 8.) Third,

Plaintiff brings claims against "ADA Eret with coworkers (including ADAs at arraignment and subsequent court dates) and supervisors" for malicious prosecution and abuse of process (allegedly using "knowingly false facts" in a prosecution). (*Id.*)

Plaintiff has not clearly identified the Defendants named in the amended complaint, but these appear to be Police Officer Darrion Grant, "John Doe" police officer (Grant's partner), 32nd Precinct supervisors, Ousseymenou Diop, ADA Eret, and other unidentified "Doe" prosecutors. Plaintiff does not specify the relief that he seeks, although his initial complaint sought damages.

## DISCUSSION

### A. Prosecutorial Immunity

Prosecutors are immune from civil suits for damages for acts committed within the scope of their official duties that are "'intimately associated with the judicial phase of the criminal process.'" *Giraldo v. Kessler*, 694 F.3d 161, 165 (2d Cir. 2012) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)); *see also Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (explaining that absolute immunity is analyzed under a "functional approach" that "looks to the nature of the function performed, not the identity of the actor who performed it" (internal quotation marks and citations omitted)). Prosecutors are also absolutely immune from suit for acts that may be administrative obligations but are "directly connected with the conduct of a trial." *Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009); *see also Ogunkoya v. Monaghan*, 913 F.3d 64, 70-72 (2d Cir. 2019) (holding that ADAs' direction as to where criminal defendant would be arraigned was in preparation for a court proceeding in which the prosecutors were acting as advocates, and ADAs were therefore shielded by absolute immunity (citing, *inter alia*, *Van de Kamp*)).

Here, Plaintiff's claims against ADA Eret and unidentified prosecutors referred to as "co-ADAs" are based on their conduct in deciding to bring charges against him and in relying, at an arraignment in April 2022, on Plaintiff's statements to Officer Grant about drawing a knife to protect his property. These actions are within the scope of a prosecutor's official duties and associated with the conduct of a trial. Therefore, Plaintiff's claims against ADA Eret and unidentified prosecutors are dismissed because they seek monetary relief against Defendants who are immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(b)(iii).

**B. False Arrest**

As set forth in the Court's prior order, where "an arrest is not made pursuant to a judicial warrant, the defendant in a false arrest case bears the burden of proving probable cause as an affirmative defense." *Mitchell v. City of New York*, 841 F.3d 72, 77 (2d Cir. 2016) (citing *Dickerson v. Napolitano*, 604 F.3d 732, 751 (2d Cir. 2010)). A plaintiff generally is not required to plead facts negating an affirmative defense. *Abbas*, 480 F.3d at 640. A false arrest claim can be dismissed based on probable cause, however, if the facts alleged in the plaintiff's complaint show that the officers had probable cause. *See Silver v. Kuehbeck*, 217 F. App'x 18, 22 (2d Cir. 2007).

Officers have probable cause to arrest when they have "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed . . . a crime." *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006).[2] "Probable cause can exist even where it is based on

[2] "The existence of probable cause depends on the totality of the circumstances," *Washington v. Napolitano*, 29 F.4th 93, 105 (2d Cir. 2022), and courts consider only the facts "available to the officer[s] at the time of the arrest and immediately before it," *Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021) (internal quotation marks and citation omitted).

mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." *Bernard v. United States*, 25 F.3d 98, 102 (1994); *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (holding that a police officer is "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest").

When information is received from a putative victim or an eyewitness, probable cause exists unless the circumstances raise doubt as to the person's veracity. *Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995). "An officer may not disregard plainly exculpatory evidence." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006). "At a minimum, if the arresting officer knows of facts that conclusively establish that an affirmative defense applies, it cannot accurately be said that the officer has probable cause that the suspect committed the offense." *Jocks v. Tavernier*, 316 F.3d 128, 135 (2d Cir. 2003).

Nevertheless, "an officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause." *Tuccillo v. Cnty. of Nassau*, 723 F. App'x 81, 82 (2d Cir. 2018) (citation omitted); *Panetta*, 460 F.3d at 396 ("Once officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." (citation omitted)). In addition, "the eventual disposition of the criminal charges is irrelevant to the probable cause determination." *Hahn v. Cnty. of Otsego*, 820 F. Supp. 54, 55 (N.D.N.Y. 1993), *aff'd*, 52 F.3d 310 (2d Cir. 1995)).

In the amended complaint, Plaintiff alleges that he was arrested without a warrant where the following circumstances were known to the arresting officers: Police officers were responding to Diop's call that he had been the victim of a robbery, they saw Plaintiff draw his knife on Diop (possibly after seeing Diop punch Plaintiff), they pointed a gun at Plaintiff and

ordered him to drop the knife, Diop then told officers (falsely) that Plaintiff had showed him the knife and tried to steal Diop's property. Both were arrested. Plaintiff told officers that he had used force to, among other things, recover his property.

Plaintiff was eventually charged with: (1) menacing in the second degree, which requires intentionally placing another person in reasonable fear of physical injury by displaying a deadly weapon, N.Y. Penal Code § 120.14; and (2) fourth degree criminal possession of a weapon, which requires that the defendant possess a "dangerous knife . . . or deadly instrument or weapon with intent to use the same unlawfully against another," N.Y. Penal Code § 265.01.[3]

The facts alleged in the amended complaint show that Police Officer Grant and his partner had personal "knowledge or reasonably trustworthy information" sufficient to warrant the belief that Plaintiff, by possessing and drawing a knife for the purpose of recovering property, had committed a crime. *Jaegly*, 439 F.3d at 152. Plaintiff contends that displaying a knife was justified under N.Y. Penal Law § 35.15, which authorizes force "reasonably necessary to defend himself, herself or a third person . . ."[4] Plaintiff's allegations that, in at least one instance, he displayed the knife to recover property, do not suffice to show that the officers were aware of facts that conclusively established that an affirmative defense applied. Moreover, neither Plaintiff's protestations of innocence nor the fact that criminal charges were ultimately dismissed affect this analysis.. *See Tuccillo*, 723 F. App'x at 82; *Hahn*, 820 F. Supp. at 55,

[3] The Court notes that "there are no circumstances when justification . . . can be a defense to the crime of criminal possession of a weapon." *People v. Carey*, 73 N.Y.S.3d 709, 710-11 (2018) (citing *People v. Pons*, 68 N.Y.2d 264, 267 (1986))).

[4] *See Thomas v. Duncan*, No. 01-CV-6792 (BSJ) (AJP), 2001 WL 1636974, at *11 (S.D.N.Y. Dec. 21, 2001) ("Penal Law § 35.15 imposes a three part test to determine whether the use of deadly physical force was justified: first, whether defendant subjectively believed deadly physical force was necessary; second, whether this belief was objectively reasonable; and third, whether defendant could have retreated with safety.").

In summary, because the allegations of the amended complaint suffice to plead that the facts known to the arresting officers gave them probable cause to arrest Plaintiff after telling him to drop the knife, Plaintiff has not stated a claim under Section 1983 for false arrest. The Court therefore dismisses Plaintiff's Section 1983 false arrest claim for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### C. Malicious Prosecution

The tort of malicious prosecution "remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process." *Wallace v. Kato*, 549 U.S. 384, 389-90 (2007). To state a claim for malicious prosecution, a plaintiff must allege facts showing: (1) that the defendant initiated or continued a prosecution against the plaintiff; (2) that the defendant lacked probable cause to commence the proceeding or believe the proceeding could succeed; (3) that the defendant acted with malice; and (4) that the prosecution was terminated in the plaintiff's favor. *See Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002).[5]

Here, Plaintiff's allegations suffice to allege favorable termination of his criminal proceedings because he alleges that his prosecution ended without a conviction. As with Plaintiff's false arrest claim, however, he has pleaded facts establishing that Defendants had probable cause to charge him with a crime. *See Stansbury v. Wertman*, 721 F.3d 84, 95 (2d Cir. 2013) ("The probable cause standard in the malicious prosecution context is slightly higher than the standard for false arrest cases."); *Rothstein v. Carriere*, 373 F.3d 275, 292 (2d Cir. 2004) ("The existence . . . of probable cause in a malicious prosecution suit is . . . determined . . . as of

[5] A malicious prosecution claim does not accrue until there is a favorable termination of the plaintiff's criminal proceedings. *See Heck v. Humphrey*, 512 U.S. 477, 489-90 (1994). "To demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction." *Thompson v. Clark*, 596 U.S. 36, 39 (2022).

the time prosecution is commenced. Because Plaintiff has pleaded facts establishing that Defendants had probable cause to commence criminal proceedings, Plaintiff's Section 1983 claim for malicious prosecution must be dismissed for failure to state a claim on which relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**D. Race-based claims: Selective Prosecution and 42 U.S.C. § 1981**

Prosecutors have discretion in making charging decisions. *See Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) ("In the ordinary case, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in [the prosecutor's] discretion."). Prosecutors are, however, subject to constitutional limits, including those imposed by the Equal Protection Clause. *See Bolling v. Sharpe*, 347 U.S. 497, 500 (1954); *Yick Wo v. Hopkins*, 118 U.S. 356, 373 (1886) (holding that when the administration of a criminal law is "directed so exclusively against a particular class of persons . . . with a mind so unequal and oppressive" then the system of prosecution amounts to "a practical denial" of equal protection of the law). Thus, the decision whether to prosecute may not be based on "an unjustifiable standard such as race, religion, or other arbitrary classification," *United States v. Armstrong*, 517 U.S. 456, 464-65 (1996). A successful claim of selective prosecution based on race requires that the plaintiff show, among other things, "that similarly situated individuals of a different race were not prosecuted." *Jones v. J.C. Penny's Dep't Stores Inc.*, 317 F. App'x 71, 74 (2d Cir. 2009).

Here, Plaintiff's amended complaint does not identify anyone else who was similarly situated or identify the race of anyone other than Plaintiff, who describes himself as Latino. In a selective enforcement claim, Plaintiffs must point to comparators whose circumstances "bear a reasonably close resemblance" to their own. *Hu v. City of New York*, 927 F.3d 81, 96 (2d Cir.

2019) (quoting *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014)). While the comparators' circumstances need not be identical, Plaintiffs must be "similarly situated in all material respects to the individuals with whom [they] seek[ ] to compare [themselves]." *Id.* (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)).

Although Plaintiff alleges that he and Defendant Diop were involved in the same altercation over property, their alleged conduct was different; Plaintiff possessed a knife and allegedly displayed it to recover his property, and Defendant Diop allegedly punched Plaintiff. On these facts, Plaintiff has not alleged that the two are similarly situated. *See*, *e.g.*, *Savino v. Town of Southeast*, 983 F. Supp. 2d 293, 305 (S.D.N.Y. 2013) (holding that there must be "a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases" (citation omitted)), *aff'd*, 572 F. App'x 15 (2d Cir. 2014). Whether Plaintiff's conduct was subject to certain criminal charges is unrelated to the question whether Defendant Diop was subject to different criminal charges for different conduct. Moreover, "[m]ere failure to prosecute other offenders is not a basis for a finding of denial of equal protection." *LeClair v. Saunders*, 627 F.2d 606, 608 (2d Cir. 1980). The allegations of the amended complaint are therefore insufficient to state a claim for selective enforcement and the Court dismisses this claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

In order to establish a claim under 42 U.S.C. § 1981, a plaintiff must allege: (1) that he is a member of a racial minority; (2) the defendants intended to discriminate on the basis of race; and (3) the discrimination concerns one of the statute's enumerated activities. *Brown v. City of Oneonta, New York*, 221 F.3d 329, 339 (2d Cir. 2000). ).[6] To prevail on a Section 1981 claim,

---

[6] Section 1981(a) lists the enumerated activities:

> [a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give

evidence of racially discriminatory intent is required. *See Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004); *Gant ex rel. Gant v. Wallingford Board of Education*, 195 F.3d 134, 139-40 (2d Cir. 1999). Plaintiff alleges no facts about race other than that he is Latino. The amended complaint is devoid of other facts suggesting that race was a factor in Plaintiff's arrest and prosecution. Plaintiff therefore does not make out a claim under Section 1981, and this claim is dismissed for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**E. Abuse of Process**

"While malicious prosecution concerns the improper issuance of process, '[t]he gist of abuse of process is the improper use of process after it is regularly issued.'" *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994) (alteration in original). To state a claim of abuse of process under Section 1983, a plaintiff must allege facts showing that a defendant: "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Id.*

Plaintiff alleges that he was subjected to abuse of process because Defendants used "knowingly false facts" at his April 2022 arraignment about (1) his March 22 arrest, which should have been treated as a matter of self-defense, rather than a crime; and (2) prior unindicted conduct (involving his alleged use of scissors as a weapon). These false facts were allegedly used to label Plaintiff as dangerous and subject him to additional restraints, such as restrictions on him

---

> evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as enjoyed by white citizens . . . .
>
> 42 U.S.C. § 1981(a).

carrying a knife for self-protection and reporting requirements that interfered with him moving to his home in Orange County. (ECF 1 at 8.) Plaintiff's allegations that prosecutors made "false" statements at a hearing, leading to stiffer penalties in criminal proceedings, are insufficient to suggest that any defendant had a collateral objective unrelated to the judicial process. *See Savino v. City of New York*, 331 F.3d 63, 77 (2d Cir. 2003) (holding that plaintiff must show that defendants "aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution"). The allegations of the amended complaint thus fail to state a claim, under Section 1983, for abuse of process, and the Court dismisses this claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**F. Conspiracy**

To state a claim of conspiracy under Section 1983, a plaintiff must show "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).

To state a conspiracy claim under Section 1985(3), a plaintiff must show the existence of: (1) a conspiracy; (2) for the purpose of depriving the plaintiff of the equal protection of the laws, or the equal privileges or immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of his right or privilege as a citizen of the United States. *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999). "[T]he [§ 1985(3)] conspiracy must also be motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.'" *Id.* (quoting *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993) (per curiam)).

Finally, a cause of action under 42 U.S.C. § 1986 is available against anyone who, "having knowledge that any of the wrongs conspired to be done and mentioned in section 1985 are about to be committed and having power to prevent or aid, neglects to do so." *Mian*, 7 F.3d at

1088 (citation omitted). Thus, a Section 1986 claim must be predicated upon a valid Section 1985 claim. *Id.* (citing *Dacey v. Dorsey*, 568 F.2d 275, 277 (2d Cir. 1978)).

Vague and unsupported assertions of a claim of conspiracy are insufficient to state a claim upon which relief can be granted. *See, e.g.*, *Stoner v. Young Concert Artists, Inc.*, 626 F. App'x 293, 296 (2d Cir. 2015) (summary order); *Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003). Plaintiff's conspiracy claim is wholly unsupported by any factual allegations suggesting an agreement to inflict an unconstitutional injury. He thus fails to state a conspiracy claim under Section 1983.

In addition, although Plaintiff alleges that officers were aware that he is Latino, this alone is insufficient to suggest that, in consulting with ADA Eret about potential criminal charges against Plaintiff, they were motivated by racially discriminatory animus. There are no allegations of racial or other class-based, invidious discriminatory animus. Plaintiff's conspiracy claims under Sections 1983 and 1985, and his claim under Section 1986 must therefore be dismissed for failure to state a claim on which relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**G. State Law Claims**

A district court may decline to exercise supplemental jurisdiction of state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (footnote omitted).

Having dismissed the federal claims of which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by

enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

**H. Leave to Amend**

District courts generally grant a *pro se* plaintiff leave to amend a complaint to cure its defects, but leave to amend may be denied if the plaintiff has already been given an opportunity to amend but has failed to cure the complaint's deficiencies. *See Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

Here, Plaintiff was granted leave to amend his complaint but the amended complaint has failed to cure the complaint's deficiencies. Because Plaintiff's amended complaint gives no indication that the defects can be cured with a further amendment, the Court declines to grant Plaintiff another opportunity to amend.

**CONCLUSION**

Plaintiff's federal claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)-(iii), and the Court declines, under 28 U.S.C. § 1367(c)(3), to exercise supplemental jurisdiction of Plaintiff's state law claims.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to enter judgment in this action.

SO ORDERED.

Dated: August 11, 2026
New York, New York

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge